**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAHNAIRA TAVAREZ,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO. 3:26-cv-1259** |
| **v.** | : | **(JUDGE MANNION)** |
| **THOMAS G. WILSON and LYFT, INC.,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

Pending before the Court is Defendant Lyft Inc.'s ("Lyft") "motion to compel binding arbitration and stay proceedings." (**Doc. 12**). For the reasons set forth herein, the motion will be **DENIED WITHOUT PREJUDICE.**

## I. BACKGROUND

The underlying cause of action originates from a motor vehicle collision occurring in Wilkes-Barre, Pennsylvania. (Doc. 7, ¶14). On or about May 25, 2024, Jahnaira Tavarez ("Plaintiff") was visiting Wilkes-Barre, Pennsylvania for her brother's wedding. *Id.*, ¶15. Non-party Carmen Molina ("Molina") purportedly requested a ride using the Lyft application, but according to Lyft, both Plaintiff and Molina had Lyft accounts and agreed to Lyft's Terms of Service. (Doc. 13 at 7). Plaintiff accordingly became a passenger in a motor vehicle operated by Lyft driver and defendant Thomas G. Wilson ("Wilson").

(Doc. 7, ¶16). During the Lyft ride, Wilson collided with a second motor vehicle, which was parked. *Id.* Plaintiff alleges that Wilson's collision caused her to suffer serious and permanent physical and emotional injuries. *Id.*, ¶17. Plaintiff's complaint alleges two counts: (1) negligence on the part of Wilson, and (2) negligent hiring and retention on the part of Lyft. *Id.* at 6-8.

Plaintiff filed her first complaint on May 11, 2026. (Doc. 1). The original complaint alleges that a Clarence H. Price ("Price") was the driver during the alleged collision. *Id.* When Price was served with the complaint, his counsel informed Plaintiff's counsel that he had never driven for Lyft, so he was not the correctly identified driver involved in the accident. (Doc. 15 at 3). The correct driver, Wilson, was then named in Plaintiff's amended complaint, which is the operative complaint before the Court. (Doc. 7). On August 5, 2026, Lyft filed an answer with affirmative defenses, including that the parties are subject to an arbitration agreement. (Doc. 10). Two days later, Lyft filed the instant "motion to compel binding arbitration and stay proceedings." (Doc. 12). On August 18, 2026, Plaintiff filed a brief in opposition. (Doc. 15). On August 27, 2026, Lyft filed a reply brief. (Doc. 16). This matter is accordingly ripe for disposition.

## II. LEGAL STANDARD

"For a court to compel arbitration, it initially must find that there is a valid agreement to arbitrate because the basis for contractual arbitration is consent, not coercion." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009) (citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)). "Because an arbitrator's authority derives solely from the parties' agreement to submit their disputes to arbitration, a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Id.* at 524 (internal citations omitted).

"To determine whether the parties agreed to arbitrate, we turn to 'ordinary state-law principles that govern the formation of contracts.'" *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chic., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995)). "Under Pennsylvania law, the party seeking arbitration bears 'the burden of demonstrating that a valid agreement to arbitrate exists between the parties.'" *Hutt v. Xpressbet, LLC*, 2020 WL 2793920, at *5 (E.D.Pa. 2020) (quoting *Goldstein v. Depository Trust Co.*, 717 A.2d 1063, 1067 (Pa. Super. Ct. 1998)). Such arbitration agreements "are upheld only where it is clear that the parties have agreed to arbitrate in a clear and unmistakable manner." *Id.* (quoting *Quiles v. Fin. Exch. Co.*, 879 A.2d 281, 287 (Pa.Super.Ct. 2005)).

A motion to compel arbitration can only be granted if the court determines that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement." *Kirleis*, 560 F.3d at 160. In Pennsylvania, "contract formation requires: (1) a mutual manifestation of an intention to be bound, (2) terms sufficiently definite to be enforced, and (3) consideration." *Id.*

The initial question of arbitrability—*i.e.*, whether or not the parties validly agreed to arbitrate—is presumed to be a question for the court unless the parties clearly and unmistakably indicate otherwise. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 773 (3d Cir. 2013). "[T]o determine whether there is a valid agreement to arbitrate, a district court 'must initially decide whether the determination is made under Fed.R.Civ.P. 12(b)(6) or 56.'" *Rajput v. Credit One Financial*, No. 15-CV-807, 2015 WL 8012938 at *2 (M.D.Pa. Dec. 7, 2015) (quoting *Sanford v. Bracewell & Guiliani, LLP*, No. 14-1763, 2015 WL 4035614, at *2 (3d Cir. July 2, 2015)). As for what standard of review is used to evaluate a motion to compel arbitration, the Third Circuit has formulated the following approach:

> [W]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a [Federal]

> Rule [of Civil Procedure] 12(b)(6) standard without discovery's delay. But if the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue, then the parties should be entitled to discovery on the question of arbitrability before a court entertains further briefing on the question. After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard. In the event that summary judgment is not warranted because the party opposing arbitration can demonstrate, by means of citations to the record, that there is a genuine dispute as to the enforceability of the arbitration clause, the court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same.

*Id.* at 776 (internal quotations omitted). Thus, "a more deliberate pace is required" when either (1) the complaint and documents referenced therein do not establish with "requisite clarity" that the parties agreed to arbitrate or (2) "the opposing party has come forth with reliable evidence that is more than a 'naked assertion . . . that it did not intend to be bound,' even though on the face of the pleadings it appears that it did." *Id.* at 774 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F.Supp.2d 474, 479 (E.D.Pa. 2011)).

When the issue of arbitrability is not apparent on the face of the complaint, "the motion to compel arbitration *must* be denied pending further development of the factual record." *Guidotti,* 716 F.3d at 774 (emphasis added). When the issue of arbitrability is apparent on the face of the complaint, but the non-moving party has come forward with evidence to place the question in issue, the motion should be resolved according to the standard provided in Rule 56. *Id.* "Under either of those scenarios, a restricted inquiry into the factual issues will be necessary to properly evaluate whether there was a meeting of the minds on the agreement to arbitrate, and the non-movant must be given the opportunity to conduct limited discovery on the narrow issue concerning the validity of the arbitration agreement." *Id.* (internal citations and quotations omitted). "After limited discovery, the court may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard." *Id.* at 776.

## III. DISCUSSION

The instant motion is premised on an agreement in Lyft's Terms of Service, which it enters into with all of its users. (Doc. 13 at 7). Lyft argues that by consenting to the Terms of Service, and by agreeing to subsequent versions of the Terms of Service, Plaintiff agreed to arbitrate her claims against Lyft. *Id.* Specifically, Lyft states that:

> The operative December 12, 2022 Terms to which Plaintiff and Ms. Molina agreed most recently before the subject [a]ccident include a prominent mutual "DISPUTE RESOLUTION AND ARBITRATION AGREEMENT" providing that "ALL DISPUTES AND CLAIMS" between Plaintiff and Lyft "SHALL BE EXCLUSIVELY RESOLVED BY BINDING ARBITRATION," expressly including claims arising out of the "Lyft Platform," "Rideshare Services," and "all other federal and state statutory and common law claims."

*Id.* at 7-8 (quoting Doc. 12-12, ¶17(a)).

The Court first considers whether "arbitrability [is] apparent on face of the complaint[.]" *Guidotti*, 716 F.3d at 774. Several federal district courts within the Third Circuit have denied motions to compel arbitration based upon a finding that the operative complaint, itself, did not clearly establish the existence of an arbitration agreement. *See Rajput v. Credit One Financial*, No. 1:15-cv-00807, 2015 WL 8012938, at *2 (M.D.Pa. Dec. 12, 2015); *Griffin v. Credit One Financial*, 15-CV-3700, 2015 WL 6550618, at *1 (E.D.Pa. Oct. 29, 2015) ("Because [the plaintiff's] complaint does not clearly establish the existence of an arbitration agreement, we shall deny [the defendant's] motion without prejudice and order limited discovery regarding the issue of whether an enforceable arbitration agreement existed."); *Reaser v. Credit One Financial*, No. 3:15-CV-1765, 2016 WL 245541, at *3 (M.D.Pa.

Jan. 21, 2016) ("Because Defendant does not address *Guidotti's* guidance on the issue before us and because the agreement to arbitrate is not clear from the face of the Complaint, this appears to be a case where the parties should be entitled to discovery on the question of arbitrability."); *Briggs v. Macy's Inc.*, 3:26-CV-902, 2017 WL 590274, at *2-3 (M.D.Pa. Feb. 14, 2017) ("The issue of arbitrability is not apparent on the face of the plaintiffs' complaint or any documents cited within the complaint . . . The plaintiffs have not conceded to the authenticity of these attached documents. Instead, the plaintiffs contest the applicability and validity of the arbitration clause . . . the court will [deny the motion and] order limited discovery on the issue of arbitrability.").

As mentioned, "when it is unclear from the complaint and its supporting documents that there was an agreement to arbitrate or . . . [P]laintiff, in [her] response to the motion to compel arbitration, denies an agreement by presenting countervailing facts, the Rule 56 summary judgment standard applies." *Griffin*, 2015 WL 6550618, at *1. Here, the amended complaint makes no reference to an arbitration agreement between Lyft and Plaintiff nor Lyft and Molina. (Doc. 7). Indeed, Plaintiff responds to the instant motion by stating that "there is no claim nor evidence adduced by either party supporting any claim that [Plaintiff] received any message or viewed any

documentation inclusive of Terms of Service prior to the trip with Defendant Wilson wherein [Plaintiff] suffered injury." (Doc. 15 at 7).

For purposes of the instant motion, it suffices to say that the current record is not conclusive as to an agreement to arbitrate. So "the motion to compel arbitration must be denied pending further development of the factual record." *Guidotti*, 716 F.3d at 775. In accordance with *Guidotti*, Lyft's motion to compel will be denied without prejudice to afford it the option of filing a renewed motion if further discovery reveals, pursuant to Rule 56, that there is no genuine dispute of material fact as to the existence of a valid agreement to arbitrate. *See Reaser*, 2016 WL 245541, at *3; *Rajput*, 2015 WL 8012938, at *3; *Potts v. Credit One Financial*, No. 3:15-CV-1119, 2016 WL 225678, at *5 (M.D.Pa. Jan. 19, 2016) (allowing sixty (60) day limited discovery on the issue of arbitrability).

Because the amended complaint contains no concessions as to the existence of any arbitration agreement, the Court need not analyze whether Plaintiff constituted a third party beneficiary to the purported arbitration agreement between Molina and Lyft pursuant to *Walker v. Uber Technologies, Inc.*, 740 F.Supp.3d 134, 146 (D.D.C. 2024). To do so would be premature. Based on the reasons set forth herein, limited discovery is necessary to determine whether Plaintiff, herself, entered an agreement with

Lyft, and alternatively, whether she was a third party beneficiary to Molina's purported arbitration agreement with Lyft.

## IV. CONCLUSION

Because the underlying agreement is not apparent from the face of the amended complaint, a Rule 12(b)(6) standard cannot apply, and Lyft's motion must be treated as a motion for summary judgment under Rule 56. For the foregoing reasons, Lyft's motion to compel arbitration will be **DENIED WITHOUT PREJUDICE.** The Court will order limited discovery on the issue of arbitrability. After such time has passed, Lyft may file a renewed motion to compel arbitration. If Lyft files a renewed motion to compel arbitration, the Court will address the parties' arguments with respect to the validity and applicability of the arbitration agreement(s) at that time.

Finally, because "requiring the parties to undergo full discovery without a clear decision regarding the motion to compel may erase 'the benefits of arbitration' such as 'efficiency, less expense, less intrusive discovery, and the like[,]'" the Court will **STAY** litigation until further Order of Court. *Sarah Car Care, Inc. v. LogistiCare Solutions, LLC*, No. 21-3108, at *2 (3d Cir.

2023) (quoting *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1921 (2023). An appropriate order follows.

**MALACHY E. MANNION**
**United States District Judge**

**DATE:** 11/4/26
23-1259-01